STATE EX REL KELLOGG *v.* DISTRICT COURT OF FIRST JUDICIAL DISTRICT.

[Argued May 30, 1893. Decided October 2, 1893.]

PHYSICIANS AND SURGEONS—*Medical examiners—Appeals.*—While the jurisdiction bestowed upon the district court by the constitution cannot be abridged by the legislature, it may invest such court with additional jurisdiction in harmony with its character and not a usurpation of the constitutional powers of any other court, and therefore the provision of the act to regulate the practice of medicine (Sess. Laws 1889, p. 175) allowing an appeal to the district court by the aggrieved party in case of the revocation or refusal by the board of medical examiners of a license to practice medicine cannot be held to contravene article VIII, section 11 of the constitution providing that the district court shall have appellate jurisdiction in all cases arising in justices' and other inferior courts, the latter provision not being prohibitory in form.

SAME—*Same.*—An appeal by a physician to the district court from the action of the board of medical examiners in revoking his license to practice his profession is

not nugatory in that the act allowing such appeals prescribes no rules to guide the district court in adjudicating that class of cases.

MANDAMUS—*District court.*—*Mandamus* is the proper remedy to reinstate in the district court an appeal properly brought within its jurisdiction, but which it dismissed on the ground of want of jurisdiction.

Original proceeding. Application for writ of mandate to compel the district court to reinstate an appeal which it had dismissed. Writ granted.

*B. P. Carpenter,* and *J. W. Kinsley,* for Relator.

*Henry N. Blake,* and *C. B. Nolan,* for Respondent.

HARWOOD, J.—Application is made herein for a writ of mandate, directed to the district court of the first judicial district, requiring it to entertain the appeal of relator from the action of the board of medical examiners of the state of Montana in revoking relator's license to practice medicine in this state.

It appears that, pursuant to the provisions of the statute in that respect made and provided (Act to Regulate the Practice of Medicine, etc., Sess. Laws 1889, 175), relator was proceeded against before said board of medical examiners upon certain charges alleged to constitute " unprofessional, dishonorable, and immoral conduct" in the practice of said profession, and, after hearing, said board found relator guilty as charged, and thereupon revoked his license to practice medicine and surgery in this state. An appeal was duly prosecuted from the decision of said board to the district court of the first judicial district in and for Lewis and Clarke county, and, upon the docketing of said appeal, motion to dismiss the same was interposed by said board of medical examiners on the following grounds: " (a) That the papers in said cause are not properly in court; (b) That there is no provision of law by which an appeal can be taken, in that the law purporting to permit an appeal is in contravention of the constitution of the state of Montana, and void; (c) That there is no procedure provided by law by which and through which a hearing on appeal can be had; (d) That the action of the medical board is final under the law, except in so far that its action may be reviewed by the district court, through the medium of summary process." Thereupon the

court, after consideration, sustained the motion and dismissed said appeal, and the same grounds are urged in this proceedings as reasons for the denial of the writ of mandate prayed for; therefore the only question involved in this consideration is whether or not such appeal would lie in favor of relator.

The act of the legislature, cited *supra,* after providing for the organization of said board of medical examiners, and prescribing its duties in respect to the examination of applicants desiring to practice medicine and surgery in this state as to their qualifications to be licensed thereunto, and for the issuance of a certificate of license by said board to persons found duly qualified, further provides that "such board may refuse or revoke a certificate for unprofessional, dishonorable, or immoral conduct, or refuse a certificate to any one who may publicly profess to cure or treat disease, injury, or deformity, in such a manner as to deceive the public. In all cases of refusal or revocation, the applicant, if he or she feel aggrieved, may appeal to the district court of the county where such applicant may have applied for a certificate." This provision for appeal in such cases appears to have been held unconstitutional by the district court in dismissing relator's appeal, as aforesaid.

The proposition is advanced that the district court cannot lawfully entertain an appeal from the action of said board, as provided for, because the constitution provides that the district court "shall have appellate jurisdiction in all cases arising in justices' and other inferior courts, in their respective districts, as may be provided by law, and consistent with this constitution." (Art. VIII, § 11.) Respondent contends that the proper interpretation of this clause of the constitution is, that the district courts can entertain appeals from justices' and inferior courts only; and such must be the construction put upon it to sustain the ruling of the court below. But the provision of the constitution under consideration is not in such prohibitory form, and we do not think that provision imports such intention. Even appeals which may be allowed from justices' and inferior courts are left by the constitution within the control of the legislature.

The construction contended for by respondent would introduce a radical change in the system provided for the control

of certain important public affairs, which has prevailed in this jurisdiction throughout the territorial *regime*, and which provisions are still contained in the body of the statute laws adopted by the constitution for state government; for that holding, logically followed out, would cut off the appeal to the district court, provided by statute, from the action of the board of county commissioners, in respect to the allowance or disallowance of claims against the county (Comp. Stats., div. 5, §§ 764, 765), appeals from the award of road viewers in laying out highways (*supra*, § 1821), appeals from the award of the commissioners in proceedings where the power of eminent domain is exercised (Code Civ. Proc., §§ 607, 608), and perhaps other appeals in similar cases. All such appeals from the action of the board to the district court of the proper district are provided for by statute in favor of the party aggrieved; and it is very doubtful that the legislature would have made provision for action of boards in such important affairs as those statutes contemplate, if such action was final, as it would be, in many respects, without provision for appeal. It is well known that a review by a court through the medium of *certiorari* would, under the rules governing such writs, be inadequate to reach a complete consideration of the case on the merits, with power to render such judgment as the justice of the case might warrant, and taking away the right of appeal in such cases might lead to declaring those numerous statutes void *in toto;* on the ground that the legislature would not have invested such boards with the large powers committed to them if their action had been understood to be final, and beyond review, through the appeal provided in the same statute. It is therefore observed how extensive and radical is the effect contemplated by the framers of the constitution in the particular under consideration, if the interpretation contended for by the respondent expresses the intention of its framers. But we think that if such was the intention, it would have been indicated without uncertainty, by a provision in the prohibitory form, unlike the clause under consideration, but something like the form unto which said clause is construed by the holding contended for in this proceeding. But, as before observed, the language of the constitution under consideration is not in such

prohibitory form; nor do we think the framers of that instrument intended such interpretation, or the radical change in the system of laws, so long prevailing in this jurisdiction, to which it leads, without any other provisions to supply the place of those laws uprooted thereby. (*State* v. *Hickman*, 11 Mont. 544.)

While it is a fundamental principle that the legislature cannot interfere with the existence or abridge the jurisdiction bestowed upon courts by the constitution it has been held by eminent authority that the legislature may invest such courts with additional jurisdiction. This subject was extensively considered in a singularly able opinion delivered by the court of errors and appeals of New Jersey, in a case decided in 1869 (*Harris* v. *Vanderveers' Ex.*, 21 N. J. Eq. 424), reaching the conclusion that, "an extension of the jurisdiction of a court, such extension being in harmony with its character, and not being a usurpation on the inherent powers of any other court, is not within the constitutional prevention." The same proposition is announced in Wells on Jurisprudence, 54; and we have been unable to find any authorities, either in cases or in works on constitutional law, to the contrary effect. Respondent's counsel cite some early cases from California in support of their view; but the court in those cases had under consideration not only a different judicial system, but entirely different constitutional provisions to construe, as shown in *Caulfield* v. *Hudson*, 3 Cal. 389, and others cited. There the constitution invested the district courts with original jurisdiction in law and equity cases, and was silent as to any appellate jurisdiction in those courts; but the controlling provision in those cases seems to be that the California constitution empowered the legislature to "give the county courts original or appellate power, or both, in special cases and in cases arising in justices' courts"; therefore the constitution provided, in effect, where the legislature should direct the appeal from the justice court in the forcible entry case there under consideration, and, we think, under like conditions, sound principles of construction and rules of logic should lead to such conclusion. The legislative provision for appeal from the justices' to the district court, as was remarked in the Caulfield case, seemed to be di-

recting the course of such appeals in a different path from that plainly marked out by the constitution, which, in effect, would take from the other courts that portion of the judicial power which the constitution had directed to be committed to it; and that would infringe the principle above adverted to—that the legislature has no power to abridge or divest a court of the jurisdiction which the constitution commits to it. All other cases cited from California appear to follow the Caulfield case, and we think they rest on conditions widely distinguished from those under consideration in the case at bar.

The question here, unlike that before the California court, relates to extension of jurisdiction of the district court over a class of cases not especially mentioned in the constitution, which may arise by virtue of statutory provisions, where such provision in no way interferes with the constitutional jurisdiction of any court in the judicial system. The statute here under consideration takes no constitutional jurisdiction from any court in this state, but invests the district court with jurisdiction of a class of important cases, to come into it, by way of appeal from the action of the board of medical examiners; and other statutes on the same footing provide for other important cases to come into the district court by way of appeal from the primary action of other boards or commissioners.

It is also insisted by respondent's counsel that the appeal in question is nugatory, because no rules of practice have been prescribed in said act of the legislature to guide the district court in adjudicating that class of cases. We do not think relator's right of appeal, with such a hearing as the legislature contemplates he shall have in the district court, can be denied, because no special rules of practice to be followed therein were prescribed. On the same ground, it might be affirmed that the board of medical examiners had no power to enter upon a hearing of charges, and determine whether a physician complained of was guilty of such conduct as authorized the revocation of his license to practice medicine and surgery in this state. The act of the legislature providing for said board, and investing it with such power, does not define the procedure which shall govern such investigations before the board. No doubt the legislature contemplated that such proceedings

should be conducted in such an orderly manner as that no substantial right would be denied the accused. (*State* v. *Schultz,* 11 Mont. 429.) With how much more force, then, can it be asserted that the legislature, in placing the case within the jurisdiction of the district court by appeal, on behalf of the party feeling aggrieved, contemplated that said court, being wise in the law and all its analogies, would adopt such appropriate procedure in the adjudication as would vouchsafe to the accused and to the prosecution a proper hearing; and thereupon such judgment would be pronounced as the law and justice of the case would warrant on the facts shown. The case is brought into the district court by appeal, without restriction, and this would seem to contemplate that the court, thus being clothed with power to try the case and to pronounce judgment, would apply the appropriate procedure. (*People* v. *Jordan,* 65 Cal. 646.) For what purpose did the legislature provide that a party feeling aggrieved might appeal the case into the district court? The party appealing would have been deprived of a license to practice medicine within this state either by refusal or revocation thereof by the board. Now, when the case is raised into the jurisdiction of the district court by appeal, was it not contemplated that thereby said court was placed in the attitude of the board of medical examiners, with power over its decision to investigate the case, and determine whether or not the appellant, under the law, ought to be denied a license, or whether such license ought to be revoked because of "unprofessional, dishonorable, or immoral conduct" in the practice of his profession? (*State* v. *Board of Medical Examiners,* 10 Mont. 162.)

The statute provides that the court may revoke the license of an attorney to practice law in the courts of this state "for malconduct in his profession" (Comp. Stats., § 106, p. 620); and no special rules of practice for the institution of a charge alleged to constitute such malconduct on the part of an attorney, and the trial thereof, are prescribed in the statute, except the obvious provision that the accused shall be notified of the charge against him, and be heard in his defense, which right probably no court would neglect to provide for on behalf of the accused. In such cases a court must direct the course of

its own procedure in many important respects, without special provision of statute made for those particular cases; but for that reason it would not refuse to exercise the duty and authority imposed upon it by statute.

It is further objected that the writ of mandate is not the proper proceeding herein to reinstate the case in the district court, but we are of opinion that such objection is untenable; that this proceeding is a proper remedy where a court refuses to entertain and adjudicate a case properly brought within its jurisdiction, and there is no objection that this case was not properly appealed into the jurisdiction of the district court.

An order will be entered directing the writ of mandate to issue.

*Writ issued.*

De Witt, J., concurs.