STATE EX REL. KEHOE, APPELLANT, *v.* STROMME ET AL.,
RESPONDENTS.

(No. 3,445.)

(Submitted February 14, 1914.   Decided March 20, 1914.)

[139 Pac. 1002.]

*Special Elections—Registration of Voters—Closing of Registra-*
*tion Books—Statutory Construction—Prohibition.*

Special Elections—Closing of Registration Books—Statutory Construc-
tion.
    1.  *Held,* that sections 7 and 18, Chapter 74, Laws of 1913, the for-
mer of which requires the closing of the registration books for a
period of thirty days before the holding of a special election, while
the latter provides for publication of notice of such closing for
thirty days prior thereto, are controlling, and that section 33
declaring that at special elections copies of the official register and
check lists used at the last preceding general election must be used,
is ineffective as in contravention of the purpose of the Act, when
considered in its entirety.
Same—Prohibition.
    2.  Where in calling a special election the county commissioners
did not allow the county clerk sufficient time to comply with the
requirements of sections 7 and 18 of Chapter 74, Laws of 1913,
relative to closing registration books and giving notice thereof, the
election could not legally be held, and the clerk was entitled to a
writ of prohibition to prevent it.
    [As to irregularities in calling or conducting elections, see notes
in 83 Am. Dec. 749; 90 Am. St. Rep. 46].

*Appeal from District Court, Silver Bow County; Michael*
*Donlan, Judge.*

PROHIBITION by the state, on relation of Dave Kehoe, as county
clerk, recorder, and *ex-officio* registrar of the county of Silver
Bow, against Gus J. Stromme and others, as county commis-
sioners of such county.   From a judgment denying the writ
and dismissing the proceeding, the relator appeals.   Reversed.

*Mr. Jas. E. Murray,* for Appellant, submitted a brief and
argued the cause orally.

*Mr. Jos. J. McCaffery* and *Mr. J. V. Dwyer,* for Respondents,
submitted a brief; *Mr. McCaffery* argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

The board of county commissioners of Silver Bow county, desiring authority to borrow $100,000 with which to complete, equip and furnish the county jail building, adopted a resolution on December 23, 1913, calling a special election for February 24, 1914, for the purpose of submitting that question to the qualified electors of the county. On February 7, 1914, the relator, who is the county clerk of Silver Bow county, filed his [1] petition in the district court for a writ of prohibition, alleging, in substance, that sufficient time had not been afforded him to comply, and therefore he had not complied, with the provisions of sections 7 and 18 of Chapter 74, Laws of 1913, which require the closing of the registration books for thirty days prior to any special election, and the publication of notice of such closing for thirty days prior thereto, and that by reason of such noncompliance the election, if held, would be void, and would entail the useless expenditure of a large sum of public money. The respondents admitted that sufficient time had not been afforded the relator as county clerk to comply with the provisions of sections 7 and 18 of Chapter 74, Laws of 1913, denied that such compliance was necessary, and alleged "that for the purposes of said election the respondents have proceeded in compliance with the provisions of section 33, Chapter 74, above referred to, and intend to and will use copies of the official register and check list which were printed and written before and used at the last preceding general election for the county of Silver Bow, together with all such valid electors as are registered up to and including the thirty-first day preceding the date set for said special election." Judgment on the pleadings was entered, denying the writ and dismissing the proceedings. From that judgment this appeal was taken, and thereafter the decision of this court, reversing the same, was announced, the opinion to follow when the business of this court might permit.

It must be appreciated at the outset that the attack was upon the election, not after, but before, its occurrence, and therefore the rules announced in *Potter* v. *Furnish,* 46 Mont. 391, 128 Pac.

542, and *Reid* v. *Lincoln County,* 46 Mont. 31, 125 Pac. 429, as favoring the validity of elections after the event, have no application. The question presented in the present case was whether sections 7 and 18, Chapter 74, Laws of 1913, are the governing provisions, or whether section 33 of the same law, unaided by any administrative device, is controlling. We say "unaided by any administrative device," because it is quite obvious that the purpose of the board to make provision for the electors who were registered after the general election of 1912 could not change the situation. The manifest effect of section 33 is to exclude from special elections every elector whose name does not appear upon the registration books used at the last preceding general election, and, however desirable it may be to avoid that result in any case, it cannot be done by administrative effort.

Chapter 74, Laws of 1913, is a re-enactment, with amendments, of Chapter 113, Laws of 1911. Its obvious purpose is to provide a scheme for perpetual registration suitable to all elections under all conditions, and the amendments consist largely in making the various provisions applicable to special as well as to general elections. In the original Act section 7 required that "during a period of thirty days immediately preceding any general election * * * such registration shall be closed." Section 7 of the Act of 1913 provides that "during the period of thirty days immediately preceding any general or special election * * * such registration shall be closed." In the original Act section 18 required that "the county clerk * * * must cause to be published * * * for thirty days before which time when such registry book shall be closed for any general election * * * a notice," *etc.* Section 18 of the Act of 1913 adds the words "or special" before "election" in this provision. From these alone it would seem reasonably clear that the legislature did intend special elections to be governed by these particular provisions. In no less than seven other places like changes are made from the original Act of 1911, reading "general election," to "general or special election" in the Act of 1913. These changes occur precisely where they should occur

if the legislature, doubting the applicability to special elections of the Act of 1911, intended to remove that doubt, and the most elementary rules of construction require us to say that changes so deliberate, so consistent, and so persistent were thus intended.

Section 33, on the other hand, has been a part of our law at least since 1895. It appears as section 1222 of the Political Code of 1895, as section 491 of the Revised Codes of 1907, and as section 33 of the Act of 1911. In the plan of registration authorized by the Codes of 1895, and by the Revised Codes of 1907, this section had a function to perform, and, as no other mention of special elections occurs in the Act of 1911, it was not necessarily inconsistent with that; but it is in utter contravention of the purposes of the Act of 1913 as everywhere else expressed therein. It is quite true that in numerical order section 33 is the last word upon the subject; but this circumstance is not sufficient to prevail over all the other provisions indicating a different legislative intent. (Rev. Codes, sec. 3558.) On the contrary, historical considerations and considerations of context alike compel the conclusion that section 33 is an inadvertence—one of those clauses which occasionally creep into the body of an Act as the result of misconception or ill-advised amendment, but which cannot be given effect without violence to the clear and plain intent of the law considered in its entirety. (*State ex rel. Seres* v. *District Court,* 19 Mont. 501, 506, 48 Pac. 1104.)

Since special as well as general elections are within the [2] provisions of Chapter 74, Laws of 1913; since the county clerk of Silver Bow county was required by sections 7 and 18 of that Act to close the registration books for thirty days before the proposed election and to give thirty days' notice of such closing prior thereto, and since this was not done, the election could not be legally held, and should have been prohibited by the district court.

For these reasons, the judgment of that court was reversed, with directions to grant the relief prayed for by the appellant.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.